**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. 23-00169-TFM** |
| | * | |
| **JOHN FITZGERALD McCARROLL, JR.,** | * | |
| aka "JUVIE," aka "LJ," et al. | * | |

**UNITED STATES' SENTENCING MEMORANDUM AND**
**OMNIBUS RESPONSE TO DEFENDANTS' SENTENCING BRIEFS**

*The ultimate weakness of violence is that it is a descending spiral, begetting the very thing it seeks to destroy. Instead of diminishing evil, it multiplies it. . . . Returning violence for violence multiplies violence, adding deeper darkness to a night already devoid of stars.*

Dr. Martin Luther King, Jr., *Where Do We Go from Here: Chaos or Community?* 64–65 (1967).

\* \* \*

The United States, by and through Sean P. Costello, the United States Attorney for the Southern District of Alabama, respectfully submits this sentencing memorandum and omnibus response to the sentencing briefs filed by defendants John Fitzgerald McCarroll, Jr. ("McCarroll"), Darrius Dwayne Rowser ("Rowser"), and Lyteria Isheeia Hollis ("Hollis"), Docs. 594–96, as ordered by the Court, Doc. 584.

This is a tragic case involving senseless, relentless, indiscriminate violence. The defendants' misguided quest for street vengeance left a bloody trail of collateral damage across Alabama and Mississippi. Their ill-conceived, sloppily executed murder plot permanently scarred a large community of innocent victims. The United States anticipates that many of those victims will exercise their rights to address the Court at sentencing, so the Court will bear witness to their resilience. But sentencing will come and go. What will remain for the victims? The arduous, daily work of picking up the pieces of their lives. The chaos that these defendants wrought will reverberate long after the Court closes this awful case.

After the jury returned verdicts finding the defendants guilty of a murder-for-hire conspiracy resulting in multiple deaths, the Court ordered the United States to explain why the defendants should receive life sentences. Docs. 478–80. The answer is simple: federal law requires life sentences, and life sentences are the minimum appropriate sentences in any event. For decades, Congress has mandated a sentence of either death or life in prison when a murder-for-hire scheme results in a person's death. Any other sentence would not only be illegal under federal law, but it also would fail to reflect the severity of the defendants' crimes, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.

The United States urges the Court to impose the life sentences that the law and justice require.

## I.    BACKGROUND

In several prior filings, the United States has detailed the procedural and factual background of this case. *See, e.g.*, Doc. 501, PageID.2317–29. The presentence investigation reports ("PSRs") also ably summarize the facts proven at the three-week trial over which this Court presided in October 2024. *See, e.g.*, Doc. 560, PageID.5688–95, ¶¶ 5–39. Thus, the United States incorporates those summaries here and will not repeat them. Instead, the United States will refer to specific facts and trial exhibits as relevant in the discussion below.

On March 10, 2025, the defendants each filed sentencing briefs advancing different reasons why the Court should not impose the life sentences that Congress has mandated. Docs. 594–96. The Court ordered the United States to respond. Doc. 584. This is the United States' omnibus response.

## II.        DISCUSSION

The jury convicted the defendants of one of the most heinous, deadly crimes proscribed by federal law. As a result, the law compels the Court to sentence the defendants to mandatory lifetime prison terms. The defendants' arguments to the contrary are meritless.

*First*, McCarroll misreads the murder-for-hire statute, wrongly suggesting that it allows the Court to impose a nominal fine and no prison time. No court has adopted McCarroll's strained interpretation of the law. Both precedent and plain meaning foreclose McCarroll's construction of the statute. *Second*, Rowser argues that a mandatory life sentence would violate the Eighth Amendment to the Constitution. Like McCarroll's statutory argument, Rowser's constitutional argument has no legal support. *Finally*, Hollis suggests that the Court can vary from the mandatory life sentence under 18 U.S.C. § 3553(a). Here again, the law forecloses Hollis's argument.

### A.        McCarroll misreads the murder-for-hire statute, which requires the Court to sentence the defendants to life in prison because their crimes resulted in multiple deaths.

Because the jury returned special verdicts finding the defendants guilty of a murder plot that resulted in two deaths, Doc. 473, PageID.1821–26, the statute requires the Court to sentence the defendants to either death or life imprisonment. The United States declined to seek the death penalty, so the statute calls for a mandatory life prison sentence. The punishment provision of the murder-for-hire statute, which uses the word "shall," gives the Court a clear command. It reads as follows:

> Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years,

or both; *and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.*

18 U.S.C. § 1958(a) (emphasis added).

McCarroll misreads the statute, arguing that its use of the phrase "or shall be fined . . . , or both" allows the Court to ignore the preceding language, "*shall* be punished by death or life imprisonment." Doc. 594, PageID.6031 (emphasis added). This misinterpretation of the law clashes with the ordinary meaning of the statute and would produce absurd results. Taking McCarroll's argument to its local conclusion would mean that the Court could impose a paltry $1.00 fine "in lieu of" any prison sentence at all for one of the most serious violent crimes in the United States Code.[1] *Id.*

When this Court construes any statute, it should begin with the language of the statute and derive its ordinary meaning from both context as well as the structure and purposes of the statutory scheme. *Paresky* v. *United States*, 995 F.3d 1281, 1285 (11th Cir. 2021). The penalties at issue in this case—when a murder-for-hire scheme results in death—fall at the zenith of a statutory spectrum that increases as societal harm deepens. If a murder-for-hire scheme culminates in death, Congress requires a prison sentence of either death or life imprisonment. The Court also may impose a fine if the defendant has an ability to pay one, but—unlike the prison sentence—a fine is not mandatory. Thus, the most natural reading of the statute is that Congress used the word "or" to separate the mandatory prison sentence from the non-mandatory fine, which turns on a defendant's ability to pay one. This reading of "or" is consistent with the purpose of the statute—

---

[1] Although McCarroll suggests that the Court may simply fine him for orchestrating a deadly murder-for-hire scheme, his PSR concludes that he has no ability to pay a fine. Doc. 560, PageID.5707, ¶ 138. Thus, the fine-only option that McCarroll advances is not simply illegal, but also impossible. *See* 18 U.S.C. § 3572(a) (requiring sentencing courts to consider, among other things, a defendant's "financial resources" in determining whether to impose a fine).

namely, to impose appropriate punishment for a murder-for-hire scheme that results in death—and the overall sentencing regime, which generally forbids probationary sentences for Class A and Class B felonies. 18 U.S.C. § 3561(a); *see also* 18 U.S.C. § 3559(a)(1) (designating an offense punishable by a maximum penalty of life imprisonment or death as a Class A felony). At most, Congress's use of "or" is a minor scrivener's error that never meant to suggest that a fine is an appropriate sentence when the participants in a murder-for-hire plot kill another person.

Unsurprisingly, the Eleventh Circuit has rejected McCarroll's contrary position in a closely analogous context. In *United States* v. *Musser*, 856 F.2d 1484 (11th Cir. 1988), a defendant advanced a similar misinterpretation of mandatory minimum sentencing language in the Controlled Substances Act ("CSA"), 21 U.S.C. § 841. Like the murder-for-hire statute, the provision of the CSA at issue in *Musser* provided as follows: "In case of a violation of subsection (a) of this section . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than forty years . . . *a fine . . . or both*." *Musser*, 856 F.2d at 1486 n.1 (emphases added) (quoting 21 U.S.C. § 841(b)(1)(B)). The defendant argued that this language authorized "a mandatory term of imprisonment *or* a fine *in lieu* of imprisonment." *Id.* at 1486 (emphases in original). The Eleventh Circuit rejected that argument. Remarking that the statute's "language might have been more precisely drafted," the *Musser* Court nevertheless held that, "[c]onstruing the subsection as a whole, it is clear that a mandatory term of imprisonment is required." *Id.*

The Supreme Court endorsed the *Musser* Court's holding in *Burrage* v. *United States*, 571 U.S. 204 (2014). Writing for a unanimous Court, Justice Scalia endorsed the *Musser* Court's conclusion that the CSA's use of "or" was, at best, "a scrivener's error" that did not allow a fine to the exclusion of a mandatory prison sentence. *Id.* at 209 n.2. It was "undisputed" in *Burrage*

that "the 'death results' provision [of the CSA] mandates a prison sentence." *Id.* This makes sense under basic principles of statutory construction. Indeed, earlier this month, the Supreme Court reiterated that in a statute, "the word 'shall' imposes a mandatory command. 'Shall' means 'must.'" *Bufkin* v. *Collins*, 604 U.S. ----, 2025 WL 698082, at *6 (Mar. 5, 2025) (citations omitted).

Other courts have cast significant doubt on McCarroll's statutory misinterpretation. For example, in *United States* v. *Marmolejas*, a defendant convicted of murder for hire resulting in death argued that Section 1958(a) "does not prescribe a mandatory minimum sentence of life imprisonment because it appears to authorize a sentence of simply a fine in lieu of any term of imprisonment." 112 F. App'x 779, 783–84 (2d Cir. 2004) (unpublished). The sentencing court rejected that argument, "concluding that the statute did not permit any discretion and that life imprisonment was a mandatory minimum, and that even if there were discretion to depart, [the court] would not exercise that discretion to do so." *Id.* at 784. On appeal, the Second Circuit noted that it "strongly doubt[ed] the merits of [the defendant's] statutory argument," and affirmed the sentence based on the district court's indication that, "even if empowered to do so, [it] would not have imposed any sentence other than . . . life imprisonment." *Id.*

Courts have reached the same conclusion as to similarly-worded laws containing "death results" enhancements. One such law, which appears in the same chapter as the murder-for-hire statute, is the violent-crime-in-aid-of-racketeering ("VICAR") statute, 18 U.S.C. § 1959(a)(1). In *United States* v. *James*, the Second Circuit interpreted the VICAR statute and found "no basis for concluding that Congress intended the unlikely result that . . . a judge was free to reject a death sentence or life imprisonment for a defendant convicted under [VICAR], but only by sentencing that defendant to a fine without prison time." 239 F.3d 120, 127 (2d Cir. 2000). Another similar

law is the drug-importation statute, 21 U.S.C. § 960(b)(2). In *United States* v. *Detrich*, the Second Circuit rejected a reading of Section 960(b)(2) that, like McCarroll's reading of Section 1958(a), would lead "to the unintelligible conclusion that the statute permits the judge to impose . . . a nominal fine and no imprisonment." 940 F.2d 37, 39 (2d Cir. 1991).

These decisions are not outliers. Rather, they form a body of well-established case law holding that statutes with "death results" enhancements require mandatory sentences, not slaps on the wrist. *See, e.g.*, *United States* v. *Mahdi*, 598 F.3d 883, 897 n.13 (D.C. Cir. 2010) (noting "common sense conclusion that the VICAR statute does not permit a fine to be levied in lieu of imprisonment or death"); *United States* v. *Haines*, 231 F. App'x 157, 159 (3d Cir. 2007) (unpublished) (collecting cases holding that courts may not impose "a fine in lieu of a term of imprisonment" under statutes containing mandatory minimum sentencing provisions); *United States* v. *Carson*, 455 F.3d 336, 385 & n.44 (D.C. Cir. 2006) ("VICAR . . . imposes a mandatory life sentence" and "does not permit a fine to be levied in lieu of imprisonment or death").

Every court that has analyzed 18 U.S.C. § 1958(a), including the Eleventh Circuit, has held that life imprisonment is the mandatory minimum sentence for a murder-for-hire conspiracy that results in death. For instance, in *United States* v. *Bottorff*, 541 F. App'x 948 (11th Cir. 2013) (unpublished), the Eleventh Circuit affirmed the life sentence of a defendant who was convicted of a murder-for-hire conspiracy resulting in death. Unlike the defendants in this case, the defendant in *Bottorff* cooperated and received a substantial-assistance departure under U.S.S.G. § 5K1.1. *Id.* at 949. Nevertheless, the district court in *Bottorff* varied upward and imposed a life sentence, which the defendant challenged as unreasonable on appeal. *Id.* The Eleventh Circuit rejected the defendant's challenge. In upholding the life sentence as reasonable, the *Bottorff* Court noted that

it "was, in fact, the applicable statutory mandatory minimum penalty." *Id.* at 950; *see also id.* (explaining that "statutory mandatory minimums are generally preclusive" unless the United States files a substantial-assistance motion for a downward departure). The court also emphasized that, as in this case, the defendant's "murder-for-hire scheme was a cold-blooded operation that would be unthinkable to a normal person . . . ." *Id.*

Several other circuits have said the same thing the Eleventh Circuit said in *Bottorff*. *See, e.g.*, *United States* v. *Fernandez*, 104 F.4th 420, 425 (2d Cir. 2024) (noting that life sentence is the mandatory minimum sentence for a murder-for-hire conspiracy resulting in death); *Martinez* v. *United States*, 803 F.3d 878, 882 (7th Cir. 2015) (similar); *United States* v. *Skiba*, 178 F. App'x 159, 160 (3d Cir. 2006) (unpublished) ("[A]bsent any reduction of sentence that might occur pursuant to a motion under § 5K1.1 and § 3553(e), life imprisonment is the mandatory minimum punishment for a violation of 18 U.S.C. § 1958 when, as was true in [the defendant's] case, death resulted from the interstate murder for hire."). Not surprisingly, then, courts also repeatedly have affirmed mandatory life sentences for murder-for-hire plots that result in death. *See, e.g.*, *United States* v. *Peña*, 58 F.4th 613, 617–23 (2d Cir. 2023); *United States* v. *Ramsey*, 219 F. App'x 953, 954–55 (11th Cir. 2007) (unpublished); *United States* v. *Isaac*, 14 F. App'x 81, 83 (2d Cir. 2001) (unpublished) (noting that "Congress rationally may consider murder for hire a more uniformly grave offense than murder in connection with a drug transaction"); *United States* v. *Smith*, 232 F.3d 650, 651–52 (6th Cir. 2000).

While McCarroll claims to be "cognizant of [these] many decisions," Doc. 594, PageID.6031, he makes no effort to distinguish them and offers no cases of his own to support his strained reading of the murder-for-hire statute. The only statutory-construction case that McCarroll does cite is the Supreme Court's decision in *Pulsifer* v. *United States*, 601 U.S. 124 (2024), which

interpreted the use of the word "and" in the safety-valve statute, 18 U.S.C. § 3553(f). McCarroll argues that this case differs from *Pulsifer* because the murder-for-hire statute, unlike the safety-valve statute, "is not ambiguous." Doc. 594, PageID.6033. But the Court in *Pulsifer* found no ambiguity in the safety-valve statute, either. *See* 601 U.S. at 152–53. It also rejected a rigid grammatical analysis in favor of a more comprehensive view of Congress's use of the word "and" that accounted for the context of the surrounding words. *Id.* at 132–41. The import of McCarroll's citation to *Pulsifer* is thus unclear. In any event, after a diligent search, the United States has not located any decision in which a court agreed with McCarroll's proposed interpretation.

Legislative history also undercuts McCarroll's position. Congress enacted the mandatory sentencing language in the murder-for-hire statute as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, 108 Stat. 1795, 1969 (Sept. 13, 1994). The mandatory "death or life imprisonment" language replaced prior language that permitted courts to impose "imprisonment *for any term of years* or for life." *Id.* (emphasis added). The purpose of the statute is clear from its legislative history: to provide "tougher sentencing for violent crimes." 103 Cong. Rec. S12604 (Aug. 25, 1994) (statement of Sen. Riegle). This Court should not interpret the murder-for-hire statute "in a manner inconsistent with the overall statutory scheme." *Norwood* v. *Brennan*, 891 F.2d 179, 182 (7th Cir. 1989).

McCarroll directs the Court's attention to a compassionate-release case in which a district court reduced a mandatory life sentence in a murder-for-hire case to 35 years under 18 U.S.C. § 3582. *United States* v. *Thomas*, 2024 WL 5239411, at *1 (D. Md. Dec. 27, 2024). But *Thomas* is inapposite and unpersuasive for several reasons. *First*, the defendant in *Thomas* did not receive a reduction in his sentence under the compassionate-release statute until after he had served more than 20 years in federal prison. *Id.* at *2 (noting that defendant had "already served over twenty

years of his sentence"). Thus, compassionate release is irrelevant because it only emerges as a matter of discretion long after a defendant has been sentenced. *Second*, unlike McCarroll, the defendant in *Thomas* "recognized the evil of his offense," "expressed remorse," and demonstrated rehabilitation. *Id.* at *3. In contrast, McCarroll tampered with a witness, tampered with evidence, and repeatedly perjured himself at trial. He could not be further from expressing remorse.

*Third*, the *Thomas* Court's reasoning is unpersuasive and stands on shaky ground. For example, the *Thomas* Court concluded that disparities between the defendant's sentence, the sentences of his codefendants, and sentences imposed in state murder cases were extraordinary and compelling reasons justifying a sentencing reduction. *Id.* at *2. But appellate courts nationwide disagree and have reversed district courts who engaged in similarly faulty analysis. *See, e.g.*, *United States* v. *Fernandez*, 104 F.4th 420, 426–33 (2d Cir. 2024) (reversing district court's compassionate-release order, reimposing mandatory life sentence for murder-for-hire conspiracy resulting in two deaths, and emphasizing that sentencing disparities between codefendants were not "a 'compelling' reason to reduce a sentence"); *United States* v. *West*, 70 F.4th 341, 346–48 (6th Cir. 2023) (reversing district court's compassionate-release order, reimposing mandatory life sentence for murder-for-hire conspiracy resulting in a death, and rejecting alleged sentencing disparity as a compelling reason for compassionate release). Accordingly, the Court should not grant *Thomas* any weight.

Crucially, even McCarroll's interpretation of the statute would not allow the Court flexibility as to the prison sentence itself. At most, McCarroll's construction erroneously invites the Court to impose a fine in lieu of a prison sentence. If the Court imposes a prison sentence, however, it still would be bound by the plain language of 18 U.S.C. § 1958(a), which calls for the imposition of death or life in prison. When death results, the imposition of a fine instead of any

prison term would constitute an absurd result that conflicts with basic principles of sentencing law. As noted, Congress generally forbids probationary sentences for Class A felonies. 18 U.S.C. § 3561(a). Courts endeavor to avoid absurd results when a reasonable interpretation also is available. *See Regions Bank* v. *Provident Bank, Inc.*, 345 F.3d 1267, 1276 (11th Cir. 2003) (recognizing the general command to avoid absurd results). In a scheme like this one, a fine also would be substantively unreasonable. *See* 18 U.S.C. § 3553(a) (identifying the factors that the Court should consider at sentencing). Fortunately, the Court does not have to decide between plain language and an absurd result in this case because the ordinary meaning of the statute favors a mandatory prison sentence of life in this circumstance.

At bottom, McCarroll's attempt to insert ambiguity into the murder-for-hire statute fails. The statute explicitly requires a life sentence for his atrocious, deadly crimes. McCarroll's suggestion that the Court could "punish" him for those crimes by assessing a $1 fine and sending him on his way conflicts with the statute's language, legislative history, case law, and common sense. The Court should reject it.

### B. The mandatory life sentence that Congress has required for Rowser's violent crimes is not cruel and unusual under the Eighth Amendment.

Unlike McCarroll, Rowser correctly concedes that the murder-for-hire statute "unambiguous[ly]" mandates "either death or a life sentence as the applicable punishment." Doc. 596, PageID.6066. Rowser instead argues that, because he is a young adult, applying the statute's mandatory life sentence to him would be "cruel and unusual" under the Eighth Amendment. *Id.*, PageID.6066–70. The Court should reject Rowser's argument because it has no legal support.

The Eighth Amendment guards against the imposition of "cruel and unusual punishments" for criminal offenses. U.S. Const. amend. VIII. The Eleventh Circuit has concluded that, "[i]n

non-capital cases, the Eighth Amendment encompasses, at most, only a narrow proportionality principle." *United States* v. *Brant*, 62 F.3d 367, 368 (11th Cir. 1995). To apply that proportionality principle, courts examine: "(1) the gravity of the offense and the harshness of the sentence; (2) the sentence imposed on other criminals in the same jurisdiction; and (3) the sentence imposed for commission of the same crime in other jurisdictions." *Id.* A defendant must show a gross disparity at the first step before a court will proceed to the other factors. *United States* v. *Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000).

Rowser's argument fails at step one. The gravity of his crimes militates in favor of a harsh sentence. Rowser shot and killed a victim in cold blood during a failed carjacking in Mississippi. Doc. 558, PageID.5633, ¶¶ 10–16; Gov't Exs. 10, 13-G. After leaving the victim to bleed out and die in a casino parking lot, Rowser burned his getaway car and messaged a coconspirator about ditching his murder weapon. Gov't Exs. 24, 105-J.

Two months later, Rowser used an illegal machinegun to open fire in a crowded nightclub, striking numerous victims. Doc. 558, PageID.5634–35, ¶¶ 17–21; Gov't Ex. 103. One of Rowser's bullets severed a victim's spine and rendered her paralyzed from the neck down. Gov't Ex. 28-D. Rowser bragged about the shooting in audio messages he sent to coconspirators, stating, "Bro! I just . . . shot four folks in the club with . . . three bullets!" Gov't Exs. 104-F, 104-G.

The next month, Rowser stole a vehicle in Mississippi and repeatedly took photos and videos of himself using the stolen vehicle to stalk the home of the murder plot's target in Mobile, Alabama. Doc. 558, PageID.5635–36, ¶¶ 22–25; Gov't Exs. 63-K, 68, 106-D. In one video, Rowser displayed an illegal machinegun with an extended drum magazine and told McCarroll how he planned to murder the target of the conspiracy in gruesome detail. Gov't Ex. 106-K, 106-L.

Rowser and his coconspirators then traveled to a Walmart to buy a GPS tracker to affix on the vehicle of the murder plot's target. Doc. 558, PageID.5636, ¶¶ 26–27. During that fateful Walmart trip, Rowser and coconspirator Jimaurice Pierce ("Pierce") fired illegal machineguns into the self-checkout area of the store, striking two victims.[2] Gov't Ex. 48-J. One of the victims was a mother whose infant child was nearby.

These facts, among many others proven at trial, underscore the severity of Rowser's crimes. Life imprisonment would not be grossly disproportionate to Rowser's actions. Far from it. A mandatory life sentence is exactly what Rowser's conduct warrants. *See United States* v. *Price*, 65 F.3d 903, 910–11 (11th Cir. 1995) (emphasizing the "depraved" nature of a murder-for-hire scheme).

The United States has not located, nor has Rowser cited, a single case holding that the mandatory life imprisonment provision of the murder-for-hire statute is unconstitutional as applied to an adult. Case law supports the opposite conclusion. Indeed, the Supreme Court has emphasized that successful Eighth Amendment challenges should be "exceedingly rare" in noncapital cases. *Solem* v. *Helm*, 463 U.S. 277, 289–90 (1983). This is because courts owe "substantial deference . . . to the legislative branch, which has the responsibility for setting criminal penalties." *United States* v. *Farley*, 607 F.3d 1294, 1343 (11th Cir. 2010).

The Eleventh Circuit "has *never* found a term of imprisonment to violate the Eighth Amendment." *Id.* (emphasis in original); *see also United States* v. *Willis*, 956 F.2d 248, 251 (11th Cir. 1992) (citing *Harmelin* v. *Michigan*, 501 U.S. 957 (1991), and rejecting claim that mandatory life imprisonment violates the Eighth Amendment). Outside the special category of

---

[2] Pierce pleaded guilty to murder-for-hire conspiracy resulting in death and declined to cooperate with the United States. Doc. 275. Accordingly, he also faces a mandatory life sentence. Doc. 521, PageID.5339, ¶ 120.

juvenile offenders, the Supreme Court has only done so once—in a case involving "a petty criminal who wrote a bad check for $100, the latest in a string of his relatively minor, nonviolent offenses." *Farley*, 607 F.3d at 1343 (citing *Solem*, 463 U.S. at 280–81). Rowser's deadly crime spree could not be more distinguishable from writing a bad check.

Rowser cites *Miller* v. *Alabama*, 567 U.S. 460 (2012), and *Graham* v. *Florida*, 560 U.S. 48 (2010), to support his argument that his "relative youth" would make it cruel and unusual to send him to prison for life. Doc. 596, PageID.6069. But those cases categorically do not apply to adults, like Rowser, who committed crimes when they were adults. As the Eleventh Circuit has held, "*Miller* is inapposite because it involved a juvenile offender facing punishment for a crime committed when he was a juvenile, and thus it focused on the reasons why it would be cruel and unusual for a *juvenile* to face a mandatory life sentence. Nothing in *Miller* suggests that an adult offender who has committed prior crimes as a juvenile should not receive a mandatory life sentence *as an adult*, after committing further crimes as an adult." *United States* v. *Hoffman*, 710 F.3d 1228, 1233 (11th Cir. 2013) (citation omitted) (emphases in original).

But even if Rowser had been a juvenile at the time he committed the crimes in this case, his argument still would fail. As courts have held, "there is no *per se* foreclosure of a life sentence without the possibility of parole for a juvenile convicted of murder." *United States* v. *Guerrero*, 560 F. App'x 110, 112 (2d Cir. 2014) (unpublished). In *Guerrero*, the Second Circuit upheld a district court's imposition of a life sentence on a 17-year-old involved in a murder-for-hire conspiracy resulting in death. There, the court emphasized the defendant's "repeated history of violent aggression after the age of majority, including a murder and attempted murder." *Id.* This describes Rowser to a T. In addition to the murder and assaults referenced above, Rowser has a documented history of other shootings, thefts, high-speed chases, and the like. Doc. 558,

PageID.5645–46, ¶¶ 118–19. If a mandatory life sentence is not cruel and unusual for a crack-cocaine offender, *see, e.g.*, *United States* v. *Ousley*, 698 F.3d 972, 975 (7th Cir. 2012), there is no logical argument that it is cruel and unusual for a convicted murderer and violent recidivist. *See United States* v. *Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021) ("[H]ow bad a repeat offender a defendant is matters greatly for purposes of sentencing.").

In the final analysis, Rowser seeks an unprecedented extension of Eighth Amendment jurisprudence that is unwarranted on this record. Rowser is an adult—not a juvenile. As an adult, he committed monstrous crimes that devastated many families and endangered communities across multiple states. He bragged about his lawlessness and laid bare his murderous intent. But for the tireless efforts of federal and local law enforcement, Rowser would have killed and injured other victims. The mandatory life sentence that this Court must impose is not cruel and unusual. It is Rowser's just desserts.

### C.  Contrary to Hollis's assertions, 18 U.S.C. § 3553(a) does not allow the Court to vary downward from the applicable mandatory life sentence.

Hollis does not raise any statutory or constitutional arguments, but rather, suggests that this Court can vary downward from the mandatory life sentence pursuant to 18 U.S.C. § 3553(a). Doc. 595. But binding case law forecloses Hollis's argument. The Court should reject it.

The Supreme Court has held that Congress may set a statutorily mandated sentence and "define criminal punishments without giving the courts any sentencing discretion." *Chapman* v. *United States*, 500 U.S. 453, 467 (1991). Where Congress does so, as with murder-for-hire conspiracies resulting in death, a district court cannot deviate below the mandatory sentence. *United States* v. *Castaing-Sosa*, 530 F.3d 1358, 1361 (11th Cir. 2008). In *Castaing-Sosa*, the Eleventh Circuit held that 18 U.S.C. § 3553(a) "plainly does not confer upon the district court the authority to sentence a defendant below the statutory mandatory minimum based on its

consideration of the § 3553(a) factors." *Id.* Rather, the only legal mechanism for this Court to sentence Hollis below the mandatory life sentence is the narrow exception set forth in 18 U.S.C. § 3553(e), which is designed to reflect "a defendant's cooperation with law enforcement." *Id.* at 1360–61.

But Hollis did not cooperate with law enforcement. Quite the contrary, she obstructed justice by tampering with a coconspirator's pistol and lying to agents who were investigating the murder plot. Doc. 559, PageID.5667, ¶¶ 41–44. Hollis twice lied to agents, suggesting that she had not moved the coconspirator's pistol. *Id.* The FBI later found her DNA on that gun. *Id.* Hollis also demonstrated her total lack of cooperation and disdain for the truth. When agents pressed her to be honest with them, she replied, "[W]here the truth gets you? Five years?" *Id.* Accordingly, Hollis has provided the Court with no legal basis to vary from the mandatory life sentence that 18 U.S.C. § 1958(a) requires.

Hollis spends the majority of her brief attempting to minimize her egregious conduct and raising arguments that the jury considered and rejected at trial. For example, Hollis contends that she "valued peace over violence" and "may have been unaware of the murder-for-hire plot." Doc. 595, PageID.6043, 6049. But the jury reasonably rejected these arguments. Indeed, the jury saw McCarroll's text messages to Hollis about "send[ing] a flunky to kill a n**ga." Doc. 559, PageID.5661, ¶ 14. The jury saw Hollis's explicit discussions with McCarroll about violent retaliatory shootings involving the target of the murder plot. Gov't Ex. 98-H. The jury saw Hollis's text messages about "pick[ing] a side" in McCarroll's ongoing street "war." *Id.* And the jury saw the many actions that Hollis took to aid the conspiracy *after* she knew police had arrested McCarroll for orchestrating a nightclub shooting in a failed effort to kill the target of the murder plot. These actions included (i) lengthy communications with coconspirators in the murder-for-

16

hire scheme; (ii) purchasing a GPS tracker to be used on the target's vehicle; (iii) purchasing an AR-15 shell catcher; (iv) tampering with evidence of the murder plot; and (v) lying to investigators, among other things. *See* Gov't Exs. 98-H, 113-D. The jury reached its verdict after the Court specifically instructed it regarding the law as to knowledge, willful blindness, and aiding and abetting a conspiracy. Doc. 486, PageID.1952, 1958–59, 1961–62.[3]

Hollis cites several district court decisions that she incorrectly claims "depart[ed] from life sentences." Specifically, she cites two second-degree murder cases, *United States* v. *Jacquez*, No. 1:14-cr-00074-MV-3 (D.N.M. 2014), and *United States* v. *Sumner*, No. 0:21-cr-00268-SRN-LIB-2 (D. Minn. 2023), and a human smuggling resulting in death case, *United States* v. *McBride*, No. 0:06-cr-60094-JAL-1 (S.D. Fla. 2007), in which courts imposed non-life sentences. But *Jacquez*, *Sumner*, and *McBride* did not involve departures from mandatory life sentences. Rather, in each case, the sentencing courts proceeded under statutes that gave them discretion to impose imprisonment "for any term of years or for life." 8 U.S.C. § 1324(a)(1)(B)(iv); 18 U.S.C. § 1111(b). In that respect, those courts confronted less serious crimes than the murder-for-hire conspiracy of which Hollis stands convicted. A more apt analogy would be to the *first*-degree murder statute, which carries the same mandatory life sentence as murder-for-hire conspiracy resulting in death. *See* 18 U.S.C. § 1111(b) ("Whoever is guilty of murder in the first degree *shall be punished by death or by imprisonment for life*." (emphasis added)).

Finally, Hollis complains about the purported unfairness of conspiracy law and its "huge burden to less culpable defendants and exposure of long imprisonment sentences." Doc. 595, PageID.6047–48. But this has been the law for more than a century. *Pinkerton* v. *United States*,

---

[3] The Court's final jury instructions also included Hollis's requested "character for peacefulness" instruction. Doc. 486, PageID.1962.

328 U.S. 640, 646–47 (1946) (collecting cases); *see also United States* v. *Chalker*, 966 F.3d 1177, 1189 (11th Cir. 2020) ("[A] member of a conspiracy is criminally liable for the reasonably foreseeable crimes that other coconspirators commit during the course of and in furtherance of the conspiracy. . . . [T]he court need not assess the individual culpability of a particular conspirator provided that the substantive crime was a reasonably foreseeable consequence of the conspiracy."). And that is for good reason: the law should disincentivize *any* aid to a brutal murder plot, let alone the significant level of aid that Hollis provided to the conspiracy in this case.

**D.    The Guidelines, the factors set forth in 18 U.S.C. § 3553(a), and fundamental principles of justice favor life sentences.**

Even if 18 U.S.C. § 1958(a) did not mandate life imprisonment (it does), life sentences still would be appropriate based on the advisory sentencing Guidelines, the factors enumerated in 18 U.S.C. § 3553(a), and fundamental principles of justice.

**1.    The Guidelines appropriately call for life imprisonment.**

The advisory sentencing Guidelines instruct the Court to sentence the defendants to life imprisonment. As set out in the PSRs, each of the defendants have combined total offense levels that far exceed the highest level contemplated in the Guidelines. *See* Doc. 560, PageID.5702, ¶ 107 (McCarroll: level 52); Doc. 558, PageID.5644, ¶ 114 (Rowser: level 48); Doc. 559, PageID.5675, ¶ 126 (Hollis: level 50). To reflect the severity of the defendants' crimes, therefore, the sentencing Guidelines call for life sentences—not a term of years. U.S.S.G. ch. 5, pt. A (sentencing table). The Eleventh Circuit "ordinarily expect[s]" a within-Guidelines sentence to be reasonable. *United States* v. *Perkins*, 787 F.3d 1329, 1342 (11th Cir. 2015). Within-Guidelines sentences of life imprisonment would be reasonable in this case.

**2.      Only life sentences would properly reflect the characteristics of the defendants and the seriousness of their crimes, promote respect for the law, and provide just punishment.**

Life sentences also are necessary to reflect "the nature and circumstances of the offense[s] and the history and characteristics of the defendant[s]." 18 U.S.C. § 3553(a)(1). It would be impossible to exaggerate the severity of this case and its devastating impact on the victims. Trial evidence showed that McCarroll caused D.S.—a father of a young child—to be murdered *simply because he was in the wrong place at the wrong time*. Rowser gunned down N.C.—a beloved family man and budding entrepreneur—*over a car that he did not even take*. The defendants' murder plot sent bullets whizzing out of illegally modified machineguns. Those bullets ripped through Mobile's nightclubs and grocery stores. They forever altered the lives of moms, dads, children, siblings, friends, loved ones, citizens. The Court and the jury heard the testimony of traumatized victims from coast to coast. A more serious set of crimes is difficult to envision.

McCarroll contends that he is a "devoted family man." Doc. 594, PageID.6034. And yet, when a family member of the murder plot's target implored McCarroll to call off the violence after bullets tore through an SUV full of children, McCarroll balked. Steadfast in his prideful bloodlust, McCarroll replied, "[the target] spilt blood first & guess what . . . all these n**gas got *pride* so it's about who trying [to] take the last lick 'NOBODY' . . . ppl over here gone . . . try to get bk til they [feel] it's *even* from what he did first." Gov't Ex. 110-L (emphases added). In another message, McCarroll warned, "find you some safe to do cause once I do my lil research I make sure yo children die." Gov't Ex. 110-M. Some family man.

McCarroll also makes much of the fact that he "was not the trigger man," was not present for certain shootings, and "earned a good living as a businessman." Doc. 594, PageID.6034. But that makes his conduct *worse*. Rather than getting his "hands dirty," Gov't Ex. 66-F, McCarroll pulled the strings, sending his substantial money to hired shooters who caused bloodshed on his

19

behalf. He stood by and watched as one of his "trigger men," Rowser, sentenced a young mother to spend the rest of her life in a mobility chair. So, the Court should give no weight whatsoever to McCarroll's suggestion that he "has great potential to benefit society." Doc. 594, PageID.6034. He is a menace to society for whom life imprisonment is the only appropriate sanction.

The same holds as to Rowser, who openly bragged about his vicious crimes. The jury witnessed Rowser's depravity in numerous trial exhibits. In one video, Rowser explained how he planned to stalk the target of the murder plot, fire 50 bullets into him after he got in his car, and then "[r]un up on him while he already leaking out and . . . put the whole other fifty in . . . his face" for "[c]onfirmation." Gov't Ex. 106-K, 106-L. In an audio message, Rowser confirmed that McCarroll was "tryin' to make [him] kill a n**ga for five racks [$5,000] and two bags [pounds of marijuana]," which was a so-called "mission" that Rowser gleefully accepted. Gov't Exs. 104-F, 104-G. In other videos, Rowser cackled maniacally as he sprayed automatic gunfire in public. *See, e.g.*, Gov't Exs. 104-M, 104-N. Put simply, he is a clear and present danger to society that this Court must neutralize.

As for Hollis, she played a crucial role in advancing the murder plot's criminal objective by paying hired shooters, obtaining tools to aid in the plot, and hiding evidence, among other things. The law holds her equally responsible as her coconspirators. She paints herself as a churchgoing stay-at-home mom with a "peaceful disposition." Doc. 595, PageID.6045. And yet, the evidence shows not only that she knowingly aided and abetted a deadly murder-for-hire conspiracy, but also that she bilked taxpayers for nearly $20,000 in COVID-relief funds. Doc. 559, PageID.5660–61, ¶¶ 6–10. She then frittered the money away on a trip to Miami, Florida to obtain plastic surgery and veneers. Hollis, too, has earned the life sentence that Congress mandated for her crimes.

### 3.    Life sentences are necessary to afford adequate deterrence to criminal conduct, both specifically and generally.

The Court's sentences must "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Few crimes should be deterred more strongly than murder-for-hire conspiracy resulting in death. *See, e.g.*, *United States* v. *Jimenez*, 2024 WL 3649504, at *2 (11th Cir. Aug. 5, 2024) (unpublished) (affirming sentence in murder-for-hire case and noting the need to deter a defendant who was "willing to agree to murder a stranger"); *United States* v. *Ellis*, 817 F. App'x 780, 792 (11th Cir. 2020) (unpublished) (upholding sentencing court's assignment of more weight to the deterrence factor in a murder-for-hire scheme). The United States urges this Court to avoid "send[ing] the wrong message to the public about the seriousness of committing murder for hire." *United States* v. *DeJesus*, 2022 WL 2619852, at *5 (D.N.J. July 7, 2022) (denying compassionate release of defendant serving life sentence for murder for hire). The Court's sentences "for a crime fundamentally incompatible with civilized society" must afford adequate deterrence. *United States* v. *Stinson*, 2023 WL 9016455, at *2 (11th Cir. Dec. 29, 2023) (unpublished) (affirming denial of compassionate-release of defendant convicted of murder for hire).

### 4.    To protect the public from further crimes of the defendants, the Court must impose life sentences.

Finally, the Court must impose life sentences "to protect the public from further crimes of the defendant[s]." 18 U.S.C. § 3553(a)(2)(C). The defendants' crimes are "as serious as serious gets." *United States* v. *Darge*, 2020 WL 3578149, at *2 (S.D.N.Y. July 1, 2020) (denying compassionate release of defendant convicted of murder for hire and emphasizing the need to "protect the public from further crimes"). They terrorized people. *See, e.g.*, E. Pounds, *Four injured in Mobile night club shooting*, NBC 15 News (Nov. 26, 2022), https://mynbc15.com/news/local/four-injured-in-mobile-night-club-shooting ("Some residents who live in the area are now on edge about going out at night."). The Court's sentences must

address the substantial danger that the defendants pose to the safety of the citizens of the Southern District of Alabama and beyond.

## III.    CONCLUSION

For the reasons stated above, this Court must sentence the defendants to life imprisonment.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By:

*/s/ Justin D. Roller*
Justin D. Roller
S. Gaillard Ladd
Assistant United States Attorneys
United States Attorney's Office
63 South Royal Street, Suite 600
Mobile, Alabama  36602
(251) 441-5845
justin.roller@usdoj.gov
gaillard.ladd@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record for the defendants.

<u>/s/ Justin D. Roller</u>
Justin D. Roller
S. Gaillard Ladd
Assistant United States Attorneys
